No. 23-1360

---

# In The
# United States Court of Appeals
# For The Fourth Circuit

**MICHAEL SHIPTON,**

*Appellant,*

**v.**

**BALTIMORE GAS & ELECTRIC COMPANY, EXELON CORPORATION, EXELON BUSINESS SERVICES COMPANY, LLC, MICHAEL GROSSCUP, EDWARD WOOLFORD, JEANNE STORCK, AND BINDU GROSS,**

*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

**CORRECTED RESPONSE BRIEF OF APPELLEES**

---

Elena D. Marcuss
Adam T. Simons
Rebecca W. Lineberry
**McGuireWoods LLP**
500 East Pratt Street
Suite 1000
Baltimore, MD 21202
Tel: (410) 659-4400
emarcuss@mcguirewoods.com
asimons@mcguirewoods.com
rlineberry@mcguirewoods.com

Jonathan Y. Ellis
**McGuireWoods LLP**
501 Fayetteville St.
Suite 500
Raleigh, NC 27601
Tel: (919) 755-6688
jellis@mcguirewoods.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, corporate Appellees Baltimore Gas & Electric Company, Exelon Corporation, and Exelon Business Services Company, LLC make the following disclosure:

1.      Appellees Baltimore Gas & Electric Company and Exelon Business Services Company, LLC are both wholly-owned subsidiaries of Exelon Corporation, which is a publicly-held corporation.

2.      Exelon Corporation is publicly traded on the NASDAQ with ticker symbol "EXC".

3.      No other publicly-held corporation or entity owns 10 percent or more of Exelon Corporation.

4.      No other publicly-held corporation or entity has a direct financial interest in the outcome of this litigation.

5.      None of the Appellees is a trade association.

6.      This matter does not arise out of a bankruptcy proceeding.

7.      This is not a criminal case in which there was an organizational victim.

*/s/ Elena D. Marcuss*
Elena D. Marcuss

*Counsel for Appellees*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................1

COUNTERSTATEMENT OF THE ISSUES.........................................................3

STATEMENT OF THE CASE................................................................................3

    I.    Factual Background..................................................................................3

        A.    The Parties.....................................................................................3

        B.    Shipton's Frequent Use of FMLA Leave ....................................4

        C.    BGE Becomes Concerned About Potential Misuse of
             FMLA Leave..................................................................................8

        D.    Shipton Submits Contradictory Medical Paperwork
             Concerning His Need for FMLA Leave .....................................9

        E.    BGE Terminates Shipton for Misusing FMLA Leave .............12

    II.    Procedural History.................................................................................13

SUMMARY OF THE ARGUMENT .....................................................................14

ARGUMENT .........................................................................................................16

    I.    Standard of Review ...............................................................................16

    II.    The District Court Properly Granted BGE Summary
        Judgment on Shipton's Claims Related to His Termination...............17

        A.    Shipton Cannot Sustain His FMLA Retaliation Claim.............17

             1.    Shipton has no direct evidence of discrimination ..........18

             2.    Shipton cannot sustain his claim based on
                 indirect proof ...................................................................20

        B.    Shipton's Interference Claim Also Fails....................................22

C.   Shipton's Attacks on BGE's Honestly Held Belief
Provide No Basis to Overturn the District Court's
Decision ......................................................................27

III.   The District Court Properly Granted Summary Judgment On
Shipton's Claims That Predated The Termination of His
Employment .........................................................................33

IV.   This District Court Correctly Held That Exelon, EBSC, and
the Individual Defendants Are Not Shipton's Employer ....................39

CONCLUSION ............................................................................42

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Anne Arundel Cnty. Pub. Schs.*,
  789 F.3d 422 (4th Cir. 2015) ........................................................... 34

*Adkins v. CSX Transportation, Inc.*,
  70 F.4th 785 (4th Cir. 2023) ....................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).........................................................................16

*Boitnott v. Corning, Inc.*,
  669 F.3d 172 (4th Cir. 2012) ..........................................................16

*Caire v. Conifer Value Based Care, LLC*,
  982 F. Supp.2d 582 (D. Md. 2013).................................................41

*Doe v. Bd. of Educ. of Prince George's Cty.*,
  982 F. Supp. 2d 641 (D. Md. 2013), *aff'd*, 605 F. App'x 159 (4th
  Cir. 2015) ........................................................................................38

*Engelhardt v. S.P. Richards Co.*,
  472 F.3d 1 (1st Cir. 2006)................................................................40

*Evans v. Tech. Applications & Serv. Co.*,
  80 F.3d 954 (4th Cir. 1996) ............................................................37

*Florez v. Holly Corp.*,
  154 F. App'x 707 (10th Cir. 2005)..................................................41

*Goldberg v. B. Green & Co.*,
  836 F.2d 845 (4th Cir. 1988) ..........................................................37

*Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of
  Greensboro*,
  64 F.3d 962 (4th Cir. 1995) ............................................................38

*Gundry/Glass Hosp. v. Shalala*,
  175 F.3d 1014 (4th Cir. 1999) ........................................................39

iii

*Honeycutt v. Baltimore County, Maryland*,
2007 WL 1858691 (D. Md. June 18, 2007), *aff'd*, 278 F. App'x
292 (4th Cir. 2008).............................................................................34

*In re Under Seal*,
749 F.3d 276 (4th Cir. 2014) ...........................................................28

*Kariotis v. Navistar Int'l Transp. Corp.*,
131 F.3d 672 (7th Cir. 1997) ...........................................................30

*Klemka v. Health Network Labs. L.P.*,
No. 21-2167, 2023 U.S. Dist. LEXIS 89581 (E.D. Pa. May 23,
2023) .....................................................................................31, 32, 33

*Laing v. Fed. Exp. Corp.*,
703 F.3d 713 (4th Cir. 2013) ......................................18, 19, 21, 29

*Md. Highways Contractors Ass'n v. Maryland*,
933 F.2d 1246 (4th Cir. 1991) .........................................................38

*Mercer v. Arc of Prince Georges Cnty., Inc.*,
532 F. App'x 392 (4th Cir. 2013) ...............................................24, 30

*Parker v. Verizon Pa., Inc.*,
309 F. App'x 551 (3d Cir. 2009) ......................................................31

*RLM Commc'ns., Inc. v. Tuschen*,
831 F.3d 190 (4th Cir. 2016) .....................................................16, 23

*Salemi v. Colorado Pub. Emps' Ret. Ass'n*,
176 F. Supp. 3d 1132 (D. Colo. 2016), *aff'd*, 747 F. App'x 675
(10th Cir. 2018).................................................................................42

*Scruggs v. Carrier Corp.*,
688 F.3d 821 (7th Cir. 2012) ...........................................................30

*Settle v. S.W. Rodgers Co.*,
182 F.3d 909 (4th Cir. 1999) .....................................................34, 35

*Sharif v. United Airlines, Inc.*,
841 F.3d 199 (4th Cir. 2016) ...................................................*passim*

iv

*Stanton v. Elliot*,
    25 F.4th 227 (4th Cir. 2022) ...............................................................38

*United States v. Smalls*,
    720 F.3d 193 (4th Cir. 2013) ..............................................................40

*United States ex rel. Parks v. Alpharma, Inc.*,
    493 F. App'x 380 (4th Cir. 2012) ......................................................16

*Vannoy v. Fed. Rsrv. Bank of Richmond*,
    827 F.3d 296 (4th Cir. 2016) ..............................................................26

*Villa v. CavaMezze Grill, LLC*,
    858 F.3d 896 (4th Cir. 2017) ........................................................16, 21

*Warwas v. City of Plainfield*,
    489 F. App'x 585 (3d Cir. 2012) ........................................................31

*Yashenko v. Harrah's NC Casino Co., LLC*,
    446 F.3d 541 (4th Cir. 2006) ......................................................*passim*

**Statutes**

29 U.S.C. § 2611 ......................................................................................40

29 U.S.C. § 2614 ...............................................................23, 24, 25, 28, 32

29 U.S.C. § 2615 ...............................................................................17, 31, 32

29 U.S.C. § 2617 ..................................................................................32, 33

**Other Authorities**

29 C.F.R. § 825.104 ................................................................................40

29 C.F.R. § 825.106 ................................................................................40

29 C.F.R. § 825.216 ...............................................................24, 25, 28, 30

Fed. R. Evid. 801 ....................................................................................38

Fed. R. Evid. 805 ....................................................................................38

**INTRODUCTION**

Appellant Michael Shipton claims that Appellees Baltimore Gas & Electric Company ("BGE"), two related entities, and several individual employees violated the Family and Medical Leave Act ("FMLA") when BGE terminated Shipton's employment in 2018 based on the contradictory medical paperwork he submitted and its belief that he had been misusing his FMLA leave. The district court properly granted summary judgment to Appellees on Shipton's claim that Appellees retaliated against him for exercising his FMLA rights and that they interfered with such rights, and this Court should affirm.

The following facts are uncontroverted. Beginning in 2015, Shipton requested and was granted FMLA leave four times. In 2017, Shipton requested and took intermittent FMLA leave—at the urging of his supervisor—based on a healthcare provider certification that said he was an uncontrolled diabetic who experienced episodes of hypoglycemia, during which he was unable to work. Shipton submitted a nearly identical certification in January 2018 for continued intermittent FMLA leave, which again stated he was an uncontrolled diabetic who experienced episodes of hypoglycemia, during which he was unable to work. BGE again granted him leave, and Shipton continued to take FMLA leave pursuant to that certification.

In May 2018, BGE questioned whether Shipton could safely operate a commercial vehicle given his episodes of hypoglycemia. In response, Shipton submitted letters—including one from the same healthcare provider who completed his two previous certifications—stating that, in fact, Shipton did ***not*** suffer from "any complications" from his diabetes, did not suffer from episodes of hypoglycemia, and had experienced no reported hypoglycemic events for ***over two years***. When Shipton could not adequately explain the contradiction, BGE concluded that Shipton had misused his FMLA leave and terminated his employment.

Based on those uncontroverted facts, the district court properly determined that Shipton could not sustain his FMLA interference and retaliation claims against his employer, BGE, or the other Appellees. Shipton and supporting amici argue that these undisputed facts do not present a legitimate basis for BGE to terminate his employment. But their arguments ignore the language of the FMLA and its regulations, as well as this Court's precedents. If accepted, their arguments would impermissibly require employers to treat employees using FMLA leave more favorably than all other employees.

For those and other reasons described below, this Court should reject Shipton's challenges and affirm the decision below.

## COUNTERSTATEMENT OF THE ISSUES

1.    Did the district court properly grant summary judgment to Appellees on Shipton's FMLA interference and retaliation claims related to the termination of his employment, where BGE terminated his employment based on his conflicting medical documentation and its belief that Shipton misused his leave?

2.    Did the district court properly grant summary judgment to Appellees on the grounds that Shipton's FMLA claims that arose prior to June 26, 2018, are barred by the statute of limitations because there was no evidence of a willful violation of the FMLA?

3.    Did the district court properly grant summary judgment to the non-BGE appellees on the additional ground that that BGE was the only proper defendant in this case, where Shipton abandoned any argument to the contrary, and there is no evidence to demonstrate any individual or entity other than BGE is his employer?

The answer to each of these questions is "yes."

## STATEMENT OF THE CASE

### I.    Factual Background

### A.    The Parties

Shipton is a former underground gas mechanic for BGE, who was hired by the company in 2014.  JA000035, JA000111-000116.  During the relevant period, BGE and Exelon Business Services Company ("EBSC") were wholly owned

subsidiaries of Exelon Corporation ("Exelon"). JA000035, JA000492. Michael Grosscup, Edward Woolford, and Jeanne Storck were fellow employees of BGE. JA000492, JA000495, JA000499. Bindu Gross was employed by EBSC but worked at BGE as a labor relations principal. JA000497.

In 2017 and 2018, Grosscup served as Shipton's direct supervisor; Woolford was his second-level supervisor; and Storck was a Human Resources Business Partner at BGE. JA000036, JA000492, JA000495.

## B.    Shipton's Frequent Use of FMLA Leave

BGE advised employees of their FMLA rights and entitlements in the employee handbook and through posters in the crew rooms. JA000493, JA001434-001435. Well aware of these rights, Shipton regularly applied for and used FMLA leave throughout his employment. JA000493, JA000132-000136, JA000310-000312.

Shipton applied for FMLA leave once in 2014 and twice in 2015. JA000493, JA000132-000136, JA000310-000312. Each time, BGE provided him FMLA forms, notices of his rights, eligibility notices, and documentation granting his leave if he was eligible. JA000493, JA000132-000136, JA000310-000312. He was thereafter permitted to take FMLA leave. JA000493, JA000132-000136, JA000310-000312. Shipton does not allege—and did not experience—any

4

interference with his FMLA rights or retaliation for taking FMLA leave during this period.  JA000010-000024, JA000493.

In 2017, after Grosscup became his supervisor, Shipton had a significant number of absences from work.  JA000495.  When Grosscup spoke with Shipton about these absences, Shipton informed Grosscup for the first time that his absences were related to diabetes.    JA000130-000131, JA000152-000153, JA000170, JA000495, JA000724-000725, JA000742-000745.    Grosscup recommended to Shipton that he apply for FMLA leave to cover his absences.  JA000152, JA000495.

In July 2017, Shipton submitted a request, as he had done in the past, for FMLA paperwork from BGE's Occupational Health Services ("OHS"), and OHS provided him an FMLA Eligibility Notice and Notice of Rights.    JA000036, JA000171, JA000313-000316.    Shipton gave this paperwork to his healthcare provider, Chelsea Hamershock, P.A., to complete.  JA000173.  Hamershock wrote the following on Shipton's FMLA Certification of Health Care Provider form for why Shipton needed leave:

4. Describe other relevant medical facts, if any, related to the condition(s) for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

Patient is an uncontrolled diabetic, ₹ very fluctuant Blood Sugars. often ₹ episodes of hypoglycemia which leads to the following (and not all-inclusive): sweats, shakey, blurred vision, dizzy, clammy, balance disturbance, foggy/confused, HA, Nausea. During these episodes patient is unable to perform any of his essential job duties

JA000177-000181, JA000317-000324.[1]

Shipton read this certification, agreed with it, and submitted it to BGE in August 2017. JA000184-000185. Based on this certification, BGE approved Shipton for intermittent FMLA leave from August 18, 2017, through February 17, 2018 for periods where he was "incapacitated by the medical condition identified in the August 18, 2017 Certification of Health Care Provider form[.]" JA000185, JA000325-000330. Shipton then took intermittent leave periodically. JA000186.

---

[1] This document states:

Patient is an uncontrolled diabetic [with] very fluctuant blood sugars; often [with] episodes of hypoglycemia which leads to the following (and not all-inclusive): sweats, shak[y], blurred vision, dizzy, clammy, balance disturbance, foggy/confused, [headaches], nausea. During these episodes, patient is unable to perform any of his essential job duties.

JA000317-000324, JA000437.

6

In December 2017, Shipton requested FMLA forms from OHS to extend his
intermittent leave.  JA000187-000188, JA000331-000334.  He again gave the forms
to Hamershock, and she provided an identical basis for his need for FMLA leave on
the Certification of Health Care Provider form dated January 2, 2018:

4.    Describe other relevant medical facts, if any, related to the condition(s) for which the employee seeks leave
      (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use
      of specialized equipment):

*Patient is a diabetic c very labile blood sugars; often c episodes of hypoglycemia which leads to the following (and not all-inclusive): sweats, shakey, blurred vision, dizzy, clammy, balance disturbance, foggy/confused, HA, Nauseous. During these episodes patient is unable to perform any of these essential job duties*

JA000189, JA000335-000338, JA000445-000446.[2]

As with the previous certification, Shipton read this document and submitted
it to BGE.  JA000189.  In January 2018, BGE approved Shipton for continued

---

[2]  This document states:

   Patient is a diabetic [with] very labile blood sugars; often [with]
   episodes of hypoglycemia which leads to the following (and not all-
   inclusive):  sweats, shak[y], blurred vision, dizzy, clammy, balance
   disturbance, foggy/confused, [headache], nauseous.  During these
   episodes, patient is unable to perform any of these essential job duties.

JA000335-000338, JA000447.

FMLA leave for "time away from work that falls within the January 2, 2018 Certification" from Hamershock.  JA000190, JA000193, JA000340-000345.

In February 2018, Grosscup completed Shipton's 2017 Performance Review. JA000196, JA000347-000353, JA000496.  Based on his non-FMLA-covered absences and his failure to timely report damage to an expensive piece of gas detecting equipment, Grosscup gave Shipton a "B- Partially Meets Expectations" overall rating.  JA000347-000353, JA000496.  Grosscup was clear that, in making that assessment, he did not consider Shipton's FMLA leave usage.  JA000347-000353, JA000496, JA000748-000750.  To the contrary, Grosscup made a point to distinguish the two types of absences in the review.  JA000347-000353, JA000496.

## C.    BGE Becomes Concerned About Potential Misuse of FMLA Leave

After Shipton was approved for FMLA leave in 2017, Grosscup noticed that Shipton seemed to use FMLA leave to extend his weekends or that he would take FMLA leave during the week but volunteer to work the weekend shifts, when he would receive a higher premium pay.  JA000206, JA000493-000494, JA000496. This had the net effect of permitting Shipton to work only five days a week while being paid more than if he worked his standard Monday through Friday schedule. JA000496.  Grosscup reported this to Woolford, who engaged BGE's Human Resources department. JA000493-000494, JA000496, JA000499.  BGE did not take

any action against Shipton, and instead decided to monitor his leave usage. JA001005, JA001065-001066, JA001155.

In April 2018, Shipton took three days of FMLA leave before he was scheduled to go to Jamaica for vacation on April 7, 2018. JA000207-000208, JA000496. As a result, he was directed to report to BGE's OHS department on April 6, 2018, and his blood sugar was tested. JA000037, JA000206-000208. It showed that Shipton was not experiencing—and had not recently experienced—a hypoglycemic episode. JA000208, JA000209, JA000498. At that point, Shipton told OHS staff he was not experiencing hypoglycemia. JA000208, JA001422. Instead, he claimed that he was taking FMLA leave for neuropathic pain in his feet. JA000208, JA001422. Shipton then went on vacation. JA000037, JA000210.

### D. Shipton Submits Contradictory Medical Paperwork Concerning His Need for FMLA Leave

When Shipton returned from vacation, OHS informed him that the hypoglycemia identified in his FMLA certifications was inconsistent with his ability to hold a commercial drivers' license pursuant to Federal Motor Carrier Safety Act ("FMCSA") standards. JA0000211, JA000212, JA001422. BGE suspended Shipton from driving company vehicles until he obtained medical clearance to reinstate his license. JA000212-000213, JA0000216, JA000505, JA001422.

Shipton asked Dr. Preethi Kadambi, who he had started seeing in March 2018, to complete a new Certification of Health Care Provider form for his FMLA leave

and to prepare a letter in support of his medical clearance for a commercial license. JA000215-000225.    In the certification, Kadambi stated that Shipton needed intermittent FMLA leave for "peripheral neuropathy with symptoms of numbness, tingling, and burning sensation."   JA000218, JA000222, JA000220, JA000358-000362.   Contrary to Hamershock's prior certifications which formed the basis for Shipton's ongoing FMLA leave, Kadambi wrote that "[p]atient has been checking sugars diligently *and has not had any episode of hypoglycemia since*" March 2018. JA000361 (emphasis added).   In the medical clearance letter, Kadambi directly contradicted Shipton's two prior FMLA certifications, stating that Shipton has "reasonably well controlled diabetes" and again that he has not had "any episodes of hypoglycemia" since March 2018.  JA000363.  Shipton, however, had taken FMLA leave under the certifications for hypoglycemia during that time.   JA000186, JA000193-000195, JA000282.

Shipton submitted both documents to OHS.  JA000222, JA000225.  BGE granted Shipton intermittent FMLA leave for peripheral neuropathy, but informed Shipton that he needed to obtain a medical clearance from Hamershock to reinstate his commercial license because she was the healthcare provider that completed his prior FMLA paperwork for hypoglycemia.  JA000222-000223, JA000225.

10

In May 2018, Shipton submitted a letter from Hamershock that completely

contradicted the FMLA certifications that she completed in August 2017 and

January 2018:

> Mr. Michael Shipton is a pleasant 49 year old male. He is in good physical and mental health. He does however carry a diagnosis of diabetes mellitus type 2 controlled on medications. His last A1C was 7.7 which displays great control. He does not use any insulin products to control his sugar.
>
> In January of 2018, we updated his FMLA papers to cover him for diabetic-related complications. However, he has not experienced and complications of the disease. There have been no reported hypoglycemic events in over 2 years. He does not experience any blurred or double vision, paresthesias, dizzy/clammy, sweaty, shaky, headaches, nausea, or vomiting. He has never as a result of his diabetes or otherwise experienced a seizure, loss of consciousness, required assistance of another individual, or experienced a period of impaired cognitive function that occurred without warning. Mr. Shipton has not had recurring (2+) disqualifying hypoglycemic reactions within 5 years as listed in FMCSA guidelines.
>
> Michael routinely monitors his blood sugars and they have been controlled – not in the range of hypo or hyperglycemia. He is not experiencing fatigue, lethargy, sluggishness, or other potential adverse reactions as his blood sugar is optimally controlled. Patient has undergone extensive evaluation and treatment of this disease and is found to be safe to operate commercial motor vehicles without concern or restriction. He is considered fit for duty in all capacities. There is not a risk for sudden death or incapacitation of any kind. Please allow Mr. Shipton to resume driving utilizing is CDL credential immediately and without restriction.

JA000225-000227, JA000364, JA000461.

In her deposition, Hamershock admitted that her statements in the May 2018

letter contradicted Shipton's two prior FMLA certifications:

> Q.   Was Mr. Shipton's report that he had no reported hypoglycemic events for greater than two years consistent with what he told you when you filled out the FMLA paperwork?
> A.    Looking back now there is inconsistencies.
> . . .
> Q.   You say, "There have been no reported hypoglycemic events in over 2 years." That's based on his report to you?
> A.   Correct.
> Q.   You'd agree that's inconsistent with the FMLA paperwork; correct?
> A.   Correct.

JA000456, JA000461.  Hamershock also admitted that, if Shipton had used FMLA leave for hypoglycemia after August 2017, her May 2018 letter would also be inaccurate.  JA000186, JA000282, JA000465.

### E.     BGE Terminates Shipton for Misusing FMLA Leave

Because the pattern of Shipton's absences and the conflict in his paperwork raised legitimate questions for BGE regarding Shipton's use of leave, BGE asked Gross, a labor relations principal assigned to BGE, to conduct a fact-finding interview with Shipton.  JA000497-000498.  With Storck present, Gross conducted the interview on June 8, 2018.  JA000038, JA000498.  Shipton told them that he had not had hypoglycemia at any time after he submitted his August 2017 certification.[3] JA001229, JA001467.  And Shipton failed to provide a reason why he had submitted two FMLA certifications that stated that he "often experiences episodes of hypoglycemia" and took FMLA leave under those certifications, but then submitted paperwork so that his commercial drivers license could be restored that stated that he did not have hypoglycemia and, in fact, did not have "any complications" due to his diabetes.  JA000364, JA000461, JA000498.

---

[3]  In yet another inconsistency, Shipton testified in his deposition that he ***did*** suffer from episodes of hypoglycemia during this time.  JA000186, JA000193-000195, JA000282.

Following the interview, in accordance with its standard procedures, BGE held a call with the Vice President of Human Resources, the Director of Human Resources, the Vice President of Labor Relations, Storck, Gross, and a representative from BGE's legal department. JA000498. During that call, the decision was made to terminate Shipton's employment because his medical documentation and use of leave were inconsistent, and he could not provide a credible explanation for the inconsistency. JA000498, JA000500, JA0001468. Woolford and Grosscup were also consulted and agreed with the decision to terminate Shipton's employment. JA000494, JA000496.

On June 26, 2018, Woolford and Storck called Shipton and notified him that his employment was terminated. JA000038, JA000243. BGE also sent Shipton a letter confirming the discussion and decision, explaining that his termination was based on suspected misuse of sick leave because he submitted conflicting medical documentation. JA000491.

## II.    Procedural History

Shipton filed this action on June 26, 2020—two years to the day of his termination. JA00004. After discovery was complete, Appellees moved for summary judgment. JA000006. Two months later, Shipton cross-moved for summary judgment. JA000007. Both motions were fully briefed. JA000007-000008.

13

In March 2023, the district court issued an order granting Appellees' motion for summary judgment, denying Shipton's cross-motion for summary judgment, and dismissing the Amended Complaint. JA000009, JA001527-001528. The court found that the undisputed facts demonstrate that: (1) all other defendants besides BGE should be dismissed from the case because the other entity defendants were not Shipton's employer and the individual defendants "did not exert significant control over [Shipton's] FMLA leave"; (2) BGE did not willfully violate the FMLA with respect to Shipton's leave requests (thus applying a two-year statute of limitations); and (3) Shipton could not sustain his FMLA retaliation and interference claims because BGE terminated Shipton's employment based on an honestly held belief that he misused his FMLA leave. JA000009, JA001527-001528.

Two weeks later, the district court issued a memorandum opinion expanding on the reasoning articulated in the order. JA000009, JA001531-001549.

## SUMMARY OF THE ARGUMENT

The material facts in this matter are simple and undisputed, Shipton's exhaustive recitation notwithstanding. Shipton submitted two FMLA certifications that said he needed leave due to episodes of hypoglycemia caused by his diabetes, and Shipton took leave based on those certifications. Shipton then submitted an FMLA certification for a different complication of diabetes, neuropathy, and BGE granted him leave under that certification. Thereafter, Shipton submitted letters from the healthcare providers who signed the certifications that stated that he had

14

not experienced any complications of his diabetes, including any hypoglycemic episodes. Based on this contradictory documentation, and Shipton's inability to adequately explain the contradiction, BGE honestly and reasonably believed that Shipton had misused his leave and terminated his employment.

The district court correctly held that Shipton could not sustain his FMLA claim under either a retaliation or interference theory. Its decision is entirely consistent with the FMLA's statutory and regulatory language and this Court's precedent.

Despite arguing below about *whether* the evidence established that BGE held an honest belief, Shipton now argues on appeal that the district court erred by *applying* the honest belief doctrine to his FMLA claims at all. Shipton's arguments are not supported by, and are inconsistent with, the FMLA and this Court's precedent. This Court should reject Shipton's arguments because otherwise the Court would be granting employees who use FMLA leave greater protection from termination for suspected misconduct than all other employees, an outcome this Court has noted would be wholly inconsistent with the purposes and goals of the FMLA.

In addition, the district court correctly held that Shipton failed to establish: (1) that BGE willfully violated the FMLA so as to extend the statute of limitations from two to three years; and (2) that the other defendants were employers for the purposes of the FMLA.

15

For all these reasons, the district court's decision should be affirmed.

## ARGUMENT

### I.    Standard of Review

This Court reviews a decision to grant summary judgment *de novo,* applying the same standards as the district court. *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017). The Court may affirm the district court's decision "'on any legal ground supported by the record and [is] not limited to the grounds relied on by the district court.'" *RLM Commc'ns., Inc. v. Tuschen*, 831 F.3d 190, 195 (4th Cir. 2016) (quoting *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993)).

In considering summary judgment, the Court must view the facts in the light most favorable to the non-moving party; however, the non-moving party cannot create a genuine dispute of material fact through "mere speculation or the building of one inference upon another." *United States ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 390 (4th Cir. 2012) (quoting *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008)); *see Boitnott v. Corning, Inc*., 669 F.3d 172, 175 (4th Cir. 2012). The non-moving party likewise cannot successfully survive summary judgment simply by establishing "[t]he mere existence of a scintilla of evidence in support" of his position; to the contrary, he must proffer "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II.     The District Court Properly Granted BGE Summary Judgment on Shipton's Claims Related to His Termination

The primary issue in this case is Shipton's challenge to BGE's decision to terminate his employment, which he claims was in violation of Section 2615(a) of the FMLA and pursues under both a retaliation and an interference theory. JA000021-000022.   The district court's decision granting summary judgment to BGE on both claims is entirely consistent with Fourth Circuit precedent and is based on the correct application of the law and facts.   Shipton and his amici argue that the district court erred by relying on what they alternately refer to as an honest-belief doctrine, rule, or defense, despite having not done so below.   In doing so, they ask this Court to create a limitation on an employer's ability to terminate an employee who is using FMLA leave that does exist in the statute.   In fact, their arguments are contrary to the FMLA's statutory and regulatory text and decades of well-established case law.   This Court should reject Shipton's argument because it would effectively exempt employees from the consequences of their own bad conduct unless the employer has irrefutable proof of bad conduct unrelated to their use of FMLA leave.

### A.     Shipton Cannot Sustain His FMLA Retaliation Claim

Employees can establish retaliation either by direct evidence or through the familiar *McDonnell Douglas* burden shifting framework that applies to most employment retaliation claims. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th

17

Cir. 2016); *Adkins v. CSX Transportation, Inc.,* 70 F.4th 785, 792-93 (4th Cir. 2023). Shipton's FMLA retaliation claim fails under either approach.

### 1.    Shipton has no direct evidence of discrimination

"Direct evidence encompasses 'conduct or statements' that both (1) 'reflect directly the alleged discriminatory attitude,' and (2) 'bear directly on the contested employment decision.'" *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)). The district court correctly held that Shipton offered no direct evidence of retaliatory intent.

In arguing that the district court erred, Shipton claims that: (1) his FMLA certifications covered him for any diabetes-related conditions; (2) BGE's documents showed that he took FMLA leave for neuropathy (notwithstanding his certification for hypoglycemia); and (3) Gross "admitted" that the basis for BGE's decision to terminate Shipton's employment "is the fact that he was using FMLA for neuropathy when Hamershock's certifications only mentioned that he needed leave for episodes of hypoglycemia." Op. Br. 44-45. Shipton's contentions are reflective of his overarching view that it does not matter what an employee's FMLA certification says so long as the employee may have a different but legitimate reason to take leave. This Court should not endorse this notion.

18

In any event, none of this is direct evidence of retaliatory intent. First, the argument that Shipton's FMLA certifications covered all diabetes-related conditions is dispelled by their plain language, which state that he was unable to work and therefore needed leave during "episodes" of hypoglycemia. JA000320-000323, JA000335-000338. Second, Shipton ignores the undisputed facts that he submitted certifications that said he suffered episodes of hypoglycemia, but later submitted letters—including one from the same healthcare provider who certified his hypoglycemia—that said he had not had any episodes of hypoglycemia (or "any complications" from his diabetes). JA000363, JA000364, JA000461. And third, Gross did not testify that BGE terminated Shipton for taking FMLA leave. Gross explained that BGE terminated Shipton's employment because it found his medical paperwork and statements contradictory and, thus, believed he was misusing leave, and that Shipton could provide "no explanation for [the contradiction], let alone a credible explanation." JA001215, JA001223.

Shipton contends that these facts are direct evidence of retaliation because they show that his termination was related to his FMLA usage. *Id*. However, these facts do not reflect a "discriminatory attitude," which is necessary to constitute direct evidence. *Laing*, 703 F.3d at 717. Indeed, Shipton cannot cite to any evidence in the record that any of the individuals involved held any discriminatory or retaliatory animus toward his use of FMLA leave. To the contrary, BGE's repeated approval

19

of Shipton's requests for FMLA leave demonstrates a lack of animus toward Shipton's exercise of his rights under the FMLA. *Sharif,* 841 F.3d at 205 (explaining when an employer consistently grants an employee's request for FMLA leave, it "is not the record of a company that is historically hostile to FMLA leave in any discernable way").

### 2.    Shipton cannot sustain his claim based on indirect proof

Shipton's FMLA retaliation claim fares no better under the *McDonnell Douglas* burden-shifting framework. Under that framework, Shipton first had to put forth sufficient evidence to establish a *prima facie* case of retaliation. At that point, BGE would be required to offer a non-discriminatory explanation for his termination. And Shipton would then "bear[ ] the burden of establishing that [BGE's] proffered explanation is pretext for FMLA retaliation." *Yashenko*, 446 F.3d at 551 (citation omitted).

This Court's FMLA cases discuss the pretext inquiry when, as here, an employee is terminated for misconduct. "Pretext calls for an inquiry into whether the suspected dishonesty and fraud were the *real reasons* for [the employer's] decision." *Adkins*, 70 F.4th at 793. The "key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Sharif*, 841 F.3d at 206 (citation omitted). "[I]t is not [the court's] province to decide whether the reason was wise, fair, *or even correct*[.]"

20

*Adkins*, 70 F.4th at 794 (citation omitted); *see Laing*, 703 F.3d at 722. "[C]ourts are not 'a kind of super-personnel department weighing the prudence of employment decisions.'" *Sharif*, 841 F.3d at 206 (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Where an employee is fired for dishonesty or fraud, it does not matter whether the employee "*actually engaged* in dishonesty or fraud." *Adkins*, 70 F.4th at 794; *cf. Villa*, 858 F.3d at 903 (noting that if an employee "was fired for misconduct she did not actually engage in, that is unfortunate, but a good-faith factual mistake is not the stuff of which [retaliation claims] are made"). What matters is the perception of the decisionmaker. *Adkins*, 70 F.4th at 794. A retaliation claim fails "so long as [the proffered non-retaliatory reason] was the genuine reason for the employment decision." *Id.* (citation omitted).

Here, even assuming that Shipton made a *prima facie* case for FMLA retaliation—which he did not—the district court properly concluded that BGE offered a legitimate, non-retaliatory reason for terminating Shipton's employment. JA001544-001549. The undisputed evidence showed that BGE reasonably concluded that Shipton misused leave because he submitted blatantly contradictory medical paperwork, and because, during the fact-finding interview with Gross and Storck, he was unable to reconcile his submission of FMLA paperwork for a condition that he later stated he never had. JA001544-001549.

The district court also correctly found that Shipton failed to adduce any evidence that this was not the real reason for the termination of his employment or that the decision was motivated by animus against his FMLA usage. JA001544-001549. Although Shipton now argues that the documentation and his leave usage can be reconciled, there is no evidence that anyone at BGE believed that to be the case at the time. Notably, even his own healthcare provider admitted that her May 2018 letter contradicted the FMLA certifications she completed in August 2017 and January 2018. JA000456, JA000461. Accordingly, the district court properly concluded that Shipton could not establish pretext and granted summary judgment on his retaliation theory.

### B. Shipton's Interference Claim Also Fails

Shipton also alleges that BGE interfered with his FMLA rights by terminating his employment. A cause of action for FMLA interference exists where an employee "can prove (1) the employer interfered with his exercise of FMLA rights and (2) the interference caused the employee prejudice." *Adkins*, 70 F.4th at 796 (citation omitted). Thus, Shipton must demonstrate "(1) that he is entitled to an FMLA benefit; (2) that [BGE] interfered with the provision of that benefit; and (3) that the interference caused him harm." *Id.* (citing *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015)).

22

As he did in the district court, in his opening brief Shipton draws no clear distinction between his retaliation and interference claims, and fails to explain the theory underlying his interference claim. Indeed, he does not identify a FMLA benefit he was entitled to that he did not get, how he contends that BGE interfered with that benefit, or how he was harmed by that alleged interference. That is not surprising because the record shows that Shipton was provided appropriate FMLA-related notices, BGE approved his FMLA requests, and he was permitted to take FMLA leave pursuant to each of those requests. JA000186-000187, JA000136-000139, JA000193-000194, JA000313, JA000317, JA000331, JA000506. On this basis alone, the district court's decision can be affirmed. *Tuschen*, 831 F.3d at 195 (noting that the Court may affirm on any legal ground supported by the record).

Presumably Shipton's interference claim is based on 29 U.S.C. § 2614(a)(1), which provides that an employee who takes FMLA leave for its intended purpose is entitled on return from such leave to be restored to their position or an equivalent position. (This is despite the fact that the record reflects that Shipton was allowed to take intermittent FMLA leave and return to work over and over again.) But both Shipton and his amici ignore the limitation on reinstatement in that same section of the FMLA: nothing in the section shall be construed to entitle the employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not take the leave."

23

29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."); *see also Yashenko*, 446 F.3d at 547 (noting the FMLA "provides an employee only a limited right to restoration to his previous employment position"). In other words, Shipton's "right to reinstatement [was] not absolute" and BGE retained the discretion to discipline or terminate his employment regardless of his FMLA usage. *Mercer v. Arc of Prince Georges Cnty., Inc*., 532 F. App'x 392, 396 (4th Cir. 2013).

Shipton and his amici seemingly contend that because Shipton eventually submitted a request for FMLA leave for neuropathy and it was approved, the FMLA prohibited BGE from terminating him unless the reason for termination was wholly unrelated to his FMLA leave. Thus, in Shipton's view, BGE was prohibited from taking any action against him for having previously claimed that he needed FMLA leave for a condition (hypoglycemia) that he later said he did not have.

The FMLA contains no such prohibition, and it does not limit an employer's right to address plausible allegations that an employee has been dishonest or otherwise engaged in misconduct, even if that conduct relates to the employee's obtainment or use of FMLA leave. Instead, the FMLA and case law—including this Court's recent decision in *Adkins*—are clear that, regardless of an employee's use of FMLA leave, employers retain the right to make employment-related decisions

24

including the right to take disciplinary action against an employee for misconduct. *See Yashenko*, 446 F.3d at 548 (noting "the careful balance that Congress has created between employees' need for protected family and medical leave and employers' need to protect their legitimate business interests"); 29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.216(a); *see also* 29 C.F.R. § 825.216(d) (stating "[a]n employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions"). As this Court has explained, "to maintain the integrity of the FMLA, employers must be able to investigate and address plausible allegations that employees have been dishonest in their medical leave claims." *Adkins*, 70 F.4th 797. Any contrary interpretation of the FMLA that provided employees on FMLA leave greater rights than those provided to employees not on leave would be "an outcome wholly inconsistent with the purposes and goals of the FMLA." *Yashenko*, 446 F.3d at 548.

This Court's recent decision in *Adkins* plainly supports the grant of summary judgment on Shipton's claim. In *Adkins*, as here, the employer terminated employees for suspected dishonesty and fraud related to their requests for medical leave. 70 F.4th at 789-91. There, as here, the terminated employees challenged the company's conclusions based on the lack of conclusive evidence of fraud. *Id*. at 793. This Court affirmed the district court's grant of summary judgment on both their retaliation and interference claims.

With regard to the retaliation claim, the *Adkins* Court concluded that the employees had failed to create a factual dispute regarding pretext because they failed to present evidence that their suspected dishonesty and fraud were not the real reasons for the employer's decision. *Id.* at 793-94. The Court emphasized that whether that suspicion was correct was not pertinent; what mattered was the perception of the decisionmaker. *See id.* at 794 (noting "[w]hile we make no determination as to whether the six plaintiffs here *actually engaged* in dishonesty or fraud, . . . we do conclude that the plaintiffs have failed adequately to challenge that suspected dishonesty was CSXT's actual reason for terminating the plaintiffs' employment").

On the interference claim, the *Adkins* Court concluded that, where, as here, the plaintiffs sought and were granted medical leave during which they were fired for misconduct there was no unlawful interference with their FMLA benefits. The Court explained that the "benefit of the FMLA and notice of FMLA rights could not have precluded the plaintiffs' loss of employment for dishonesty." *Id*. at 797 (citing *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296 (4th Cir. 2016)); *see Vannoy*, 827 F.3d at 304-05 ("The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior."). The Court explained:

> The FMLA serves the important purpose of allowing employees to take leave for legitimate family needs and medical reasons, but it is not a

right that can be fraudulently invoked with impunity. In order to maintain the integrity of the FMLA, employers must be able to investigate and address plausible allegations that employees have been dishonest in their medical leave claims. In this case, CSXT did just that, and the plaintiffs have failed to meet their burden of showing that CSXT's explanation for their termination — that is, that the company determined that the employees had violated workplace rules regarding dishonesty — was pretextual. And the plaintiffs have also failed to demonstrate that if they had been provided notice of their rights under the FMLA, they would have obtained a different outcome, either with respect to how their leave was structured or CSXT's ultimate determination regarding whether their leave request was evidence of dishonesty.

*Adkins*, 70 F.4th at 797.

The same analysis applies in this case. Shipton cannot point to a FMLA benefit that he was denied, and he cannot demonstrate how the FMLA precluded the outcome in this matter. The FMLA's right to reinstatement is limited and does not preclude BGE from terminating Shipton's employment based on its determination that his medical paperwork was contradictory and its belief that he had misused his leave. Accordingly, this Court should affirm the district court's rejection of Shipton's interference claim.

### C. Shipton's Attacks on BGE's Honestly Held Belief Provide No Basis to Overturn the District Court's Decision

In addition to arguing that BGE could not terminate him for misconduct unless the misconduct was unrelated to his use of FMLA leave, Shipton argues on appeal that BGE could not terminate his employment without conclusive evidence of the misconduct: that is, BGE's honest and entirely reasonable belief was insufficient.

27

Op. Br. 40-43.  The Court should reject Shipton's and his amici's arguments because they were not raised below, and because they are not supported by the FMLA's statutory text or its implementing regulations and are inconsistent with well-established case law.

First, in the district court Shipton argued that the evidence did not support BGE's belief.  He did not argue that an employer's honest belief is not sufficient as a matter of law, as he does now.  *See* Plaintiff's Memorandum of Law [in] Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment (Doc. No. 50) and Shipton's Reply in Support of His Cross Motion for Summary Judgment (Doc. No. 64).  For that reason alone, this Court should decline to consider Shipton's and his amici's arguments that the Court should reject the "honest belief doctrine."  *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (noting that the Court will not accept theories that were not raised before the district court except under unusual circumstances).

Second, as stated above, the FMLA is clear that the right to reinstatement does not provide employees who have taken FMLA leave greater protections than employees who have not taken FMLA leave.  *See* 29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.216(a).  However, under Shipton's theory, employees using FMLA leave would be afforded greater protections than other employees because they could not be terminated for suspected misconduct when other employees could be.  Such a rule

28

would be inconsistent with the language and purpose of the FMLA and this Court's precedents. *See, e.g., Yashenko*, 446 F.3d at 548 (noting that any interpretation of the FMLA that provides employees taking FMLA leave greater rights than other employees would be "wholly inconsistent with the purposes and goals of the FMLA"); *Adkins*, 70 F.4th at 797 (noting that FMLA leave "is not a right that can be fraudulently invoked with impunity").

Third, this Court has repeatedly recognized that when scrutinizing an employer's reason for taking an employment action the question is whether it was the *real reason,* the *genuine reason*, or the *true reason* for the action, and not whether the reason was wise, fair, or even correct. *See, e.g., Adkins*, 70 F.4th at 793-94; *Sharif*, 841 F.3d at 206; *Laing*, 703 F.3d at 722. As this Court wrote in *Sharif*, the "key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." 841 F.3d at 206 (citation omitted). Here, the documents that Shipton submitted were clearly contradictory and, despite that contradiction, BGE gave Shipton the opportunity at a fact-finding interview to reconcile them, which he could not do. Under these circumstances, holding that an employer's honest belief that an employee engaged in misconduct is an insufficient basis to take an employment action would be inconsistent with this body of case law.

29

Fourth, the Seventh Circuit's decision in *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672 (7th Cir. 1997), which Shipton wants this Court to reject, is based on these same principles. Like the Fourth Circuit, the Seventh Circuit has held it is not the court's province to question whether the employer's decision is correct, desirable, or "right but whether the employer's description of its reasons is honest." *Id.* at 676-77 (quoting *Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)). The Seventh Circuit's affirmance of the district court's grant of summary judgment in favor of the employer on the employee's FMLA interference claim was based on those principles and language of 29 C.F.R. § 825.216(a) that an employee taking FMLA leave has no greater right to reinstatement or other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. The Seventh Circuit wrote:

> In other words, because Navistar lawfully could have terminated Kariotis after suspecting she committed fraud while on duty, the company can discharge her after suspecting she committed fraud while on leave. If Navistar had to prove more than an honest suspicion simply because Kariotis was on leave, she would be better off (and enjoy "greater rights") than similarly situated employees (suspected of fraud) who are not on leave. The statute and the regulations rule out that inequity.

*Id.* at 681. Not surprisingly given its similarity in the treatment of employment claims, this Court cited *Kariotis* favorably in *Mercer*, 532 F. App'x at 396. And other cases in the Seventh Circuit and Third Circuit have followed *Kariotis*. *See, e.g.*, *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825-26 (7th Cir. 2012) (noting that to

defeat an FMLA interference claim "an employer need only show that it refused to reinstate the employee based on an 'honest suspicion' that she was abusing her leave") (internal quotations and citation omitted); *Warwas v. City of Plainfield*, 489 F. App'x 585, 588 (3d Cir. 2012); *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 563 (3d Cir. 2009) (noting that the FMLA "does not shield an employee from termination simply because the alleged misconduct concerns use of FMLA leave" and that "[j]ust as suspected fraud or violation of company policy would be a sufficient basis to discharge an employee not on FMLA leave, it is a sufficient basis to discharge one who misuses FMLA leave"); and cases cited therein.

Amici cite an unpublished Eastern District of Pennsylvania case, *Klemka v. Health Network Labs. L.P.*, No. 21-2167, 2023 U.S. Dist. LEXIS 89581 (E.D. Pa. May 23, 2023) in which the court considered whether an honest belief affirmative defense is available in an FMLA interference claim. *Klemka* is incorrectly decided and not binding. There the court started by affirming that the "honest belief defense is an acceptable defense in FMLA retaliation cases." *Id.* at *17-18. In order to determine its applicability to an interference claim, the court looked for a mention of the "honest belief defense" in the statute. The closest thing it found is the provision that an employer who has violated the FMLA can avoid liquidated damages by proving that its act or omission that violated Section 2615 of the FMLA was in "***good faith*** and that the employer had reasonable grounds" for believing that

the act or omission was not a violation of Section 2615. *Id.* at *21-23 citing 29 U.S.C. § 2617(a)(1)(A). The court, however, failed to recognize that the principle that an employer's honest or genuine belief (not indisputable proof) of misconduct is sufficient to avoid wrongful discharge liability is conceptually different from the "good faith belief that it was not violating the law" defense to liquidated damages.

The court's conclusion that Section 2617(a)(1)(A) limits the employer's honest belief defense in an interference claim to a defense to liquidated damages was based on an incorrect conclusion that Section 2615 is the statutory basis for interference claims and not retaliation claims. In fact, Section 2615 is the statutory basis for **both** interference and retaliation claims, which renders the court's decision internally inconsistent. To follow the district court's reasoning, because retaliation claims are also based Section 2615, it was improper for the court to consider an employer's honest belief as part of a retaliation claim, despite its earlier recognition that it is an "acceptable defense."

Finally, the court in *Klemka* mentioned 29 U.S.C. § 2614(a)(3) in a footnote stating that an employer can "still, of course, defend against FMLA interference claims by proving . . . that they had a non-FMLA-related reason to terminate the plaintiff." *Id.* at *25 n.11. However, as discussed above, Section 2614(a)(3) does not limit an employer's right to take an employment action to "non-FMLA related" reasons, and the court failed to address whether an employer's honest belief in a non-

FMLA related reason would be sufficient.  In light of these and other issues with the district court's decision in *Klemka*, this Court should reject its reasoning.

Here, the district court's decision that the undisputed evidence that BGE honestly believed that Shipton had engaged in misconduct was sufficient to defeat his FMLA interference claims was consistent with the plain language of the FMLA and this Court's prior decisions.  Shipton's arguments on appeal, if accepted, would make an employee who, like Shipton, uses intermittent FMLA leave (which can extend over the course of a year and be renewed year after year) effectively immune from disciplinary action unless the employer has irrefutable evidence of wrongdoing unrelated to the FMLA.  Such a result is contrary to the plain language of the FMLA.

## III.    The District Court Properly Granted Summary Judgment On Shipton's Claims That Predated The Termination of His Employment

The district court also correctly found that Shipton had not presented any evidence to support the finding of a "willful" violation of the FMLA and that, as a result, the only timely claims before it were Shipton's claims related to the decision to terminate his employment on June 26, 2018.

The default statute of limitations under the FMLA is two years.  29 U.S.C. § 2617(c)(1).  However, if the employer engaged in a willful violation of the FMLA, the limitations period is extended to three years.  29 U.S.C. § 2617(c)(2).  To prove a willful violation, Shipton must show more than "mere negligence" and, instead, must demonstrate that Appellees "knew or showed a reckless disregard regarding

33

whether its conduct was prohibited." *Settle v. S.W. Rodgers Co.*, 182 F.3d 909 (4th Cir. 1999) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-35 (1988)). Shipton has not made that showing.

The record demonstrates that: BGE provided Shipton information about FMLA leave and repeatedly granted his requests for FMLA leave; Grosscup suggested Shipton request FMLA leave once he was put on notice that Shipton may have a qualifying reason; and BGE thereafter supplied Shipton the required FMLA forms, granted his requests for FMLA leave, permitted him to take FMLA leave, and kept Shipton apprised of his FMLA status. This Court and others have correctly found no willful FMLA violation in materially similar circumstances. *See Sharif*, 841 F.3d at 205 (explaining it "is not the record of a company that is historically hostile to FMLA leave in any discernable way" when an employer consistently grants an employee's request for FMLA leave); *Adams,* 789 F.3d at 427 (concluding that the employer did not interfere with the employee's FMLA rights in part because of the "salient fact" that the employee was not denied leave and took medical leave on three separate occasions); *Settle*, 182 F.3d 909 at *3-4; *Honeycutt v. Baltimore County, Maryland*, 2007 WL 1858691, at *3-4 (D. Md. June 18, 2007), *aff'd*, 278 F. App'x 292 (4th Cir. 2008)).

Shipton's attacks on the district court's analysis are misplaced. First, Shipton complains that his supervisors, including Grosscup, did not give him notice of his

rights to FMLA leave despite his absences for diabetes for over two years. Op. Br. 51. But BGE had provided him with notice of his FMLA rights both in the employee handbook and through notices that were posted, and he was already well-aware of the process to obtain FMLA leave because he applied for FMLA leave multiple times throughout his tenure, including in April 2014, September 2014, January 2015, May 2015, and July 2015. JA000493-000494. Moreover, by his own admission, Shipton did not inform either Grosscup or Woolford that his absences were caused by his diabetes until the summer of 2017, at which point, Grosscup promptly informed him that he should seek FMLA leave. JA000130-000131, JA000152-000153, JA000170, JA000495, JA000725, JA000742-000745. Even if Grosscup knew Shipton's absences were related to his diabetes earlier—and there is no evidence to support that assertion—Shipton has presented no evidence that any failure by Grosscup to advise Shipton that he might be entitled to FMLA leave was more than mere negligence. Indeed, any suggestion of willfulness is belied by the fact that it was Grosscup who encouraged Shipton to seek FMLA leave in the first place. Accordingly, there is no evidentiary basis to extend the statute of limitations. *See Settle*, 182 F.3d 909 (4th Cir. 1999).

Second, Shipton argues that Grosscup "falsely accused him of misusing his leave." Op. Br. 51. This assertion misstates the record. Grosscup never accused Shipton of misusing his leave and never took an adverse action against him for any

suspected misuse.  Grosscup believed Shipton's pattern of absences—taking time during the week and then working weekends for premium pay—was concerning enough that he needed to alert his manager, Woolford.  JA000749-000755.  This is hardly indicative of hostility to FMLA leave; it is simply Grosscup doing his job as Shipton's first-level supervisor.  In any event, there was no interference with Shipton's FMLA rights or adverse action taken against him as a result.  BGE simply continued to monitor his pattern of absences.  JA001005, JA001065-001066, JA001155.

Third, Shipton points to Grosscup's "mediocre" review of his 2017 performance, which Shipton attributes to his FMLA absences.  Op. Br. 51.  But, again, this assertion is contradicted by the record evidence.  Grosscup rated Shipton as "B- Partially Meets Expectations" because Shipton "struggle[d] with his attendance and reporting of incidents."  JA000347-000353, JA000496.  The incidents that Shipton failed to report included him breaking an expensive piece of gas-detecting equipment.  JA000347-000353, JA000496.  And in making his assessment on the absences, Grosscup clearly distinguished Shipton's FMLA-covered absences.  JA000347-000353, JA000496, JA000748-000750.  Because Shipton's performance review had nothing to do with his FMLA usage, even if it prevented him from getting another position or receiving a raise, it cannot provide

the basis for a willful FMLA violation.[4]  Shipton's allegation that Grosscup "ignored his complaints challenging the [2017] review" is no more salient.  Op. Br. 51. Grosscup testified he was aware that Shipton complained about his 2017 review, but that Shipton made those complaints to Woolford—not Grosscup.  And Grosscup made it clear that he had no issues or concerns with Shipton complaining to Woolford regarding his review.  JA000747 (Q: "Did you have a problem with [Shipton] going to Mr. Wolford [sic] and complaining about his review?" A: "No, I do not – did not.").  Again, Shipton cannot show any interference with his FMLA rights or any adverse action he suffered as a result.

Fourth, Shipton argues that Grosscup "pressured him to reduce or limit his FMLA usage."  Op. Br. 51.  The district court properly disregarded this contention because it was based solely on Shipton's own self-serving testimony.  Shipton's personal belief is insufficient to present an issue of genuine fact.  *See Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).  And there is no evidence to substantiate Shipton's belief; indeed, he failed to identify a single instance where he needed to take FMLA leave but was denied that right.

---

[4]    In any event, Shipton failed to even identify a position for which he allegedly applied and was denied, and does not even know if the hiring managers reviewed performance evaluations.  JA000154-000163.

Fifth, Shipton contends that Grosscup was hostile to him because Grosscup "played one of his call-out messages in front of co-workers, laughed, and said he should be fired." Op. Br. 51. But Shipton offers no competent evidence that any such incident actually occurred. Shipton's basis for making that assertion is inadmissible hearsay by another employee. There is no hearsay exception that would permit his co-workers' statements to be admissible. As such, the district court properly disregarded them. *See Stanton v. Elliot*, 25 F.4th 227, 237 n.7 (4th Cir. 2022) (noting that hearsay cannot create a factual dispute); *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro,* 64 F.3d 962, 967 (4th Cir. 1995) (noting affidavits and depositions based on hearsay are "neither admissible at trial nor supportive of an opposition to a motion for summary judgment"); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991).[5]

Lastly, Shipton contends that the termination of his employment was a willful FMLA violation. But, as set forth above, because the district court properly found that BGE did not interfere with Shipton's FMLA rights or retaliate against him when

---

[5] Even if Grosscup's statements were considered the statement of a party opponent, Shipton must satisfy two levels of hearsay: (1) Grosscup's statement to the co-worker and (2) the co-worker's statement to Shipton. Fed. R. Evid. 801 and 805; *Doe v. Bd. of Educ. of Prince George's Cty.*, 982 F. Supp. 2d 641, 656 (D. Md. 2013), *aff'd*, 605 F. App'x 159 (4th Cir. 2015). No hearsay exclusion or exemption exists for the latter.

it terminated his employment, there was no willful violation to extend the statute of limitations.

## IV.    This District Court Correctly Held That Exelon, EBSC, and the Individual Defendants Are Not Shipton's Employer

Finally, the district court properly granted summary judgment in favor of Exelon, EBSC, and the individual defendants on the ground that they were not Shipton's "employer" under the FMLA.  Shipton's arguments to the contrary were disregarded by the district court and should be disregarded here because they were raised for the first time in his reply brief and are irrelevant in the absence of a FMLA violation.  Regardless, Shipton cannot point to any ***evidence*** to demonstrate that Exelon, EBSC, or the individual defendants are employers under the FMLA.

Shipton has forfeited the arguments he now advances for why Exelon, EBSC, and the individual defendants should remain in this case.  Appellees clearly argued in their motion for summary judgment that Exelon, EBSC, Storck, Grosscup, Woolford, and Gross were not proper defendants for his FMLA claims.  *See* Defendants' Motion for Summary Judgment (Doc. No. 42).  Shipton nevertheless failed to address this argument in his Memorandum of Law [in] Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment (Doc. No. 50).  As a result, those arguments should not be considered here. *See Gundry/Glass Hosp. v. Shalala*, 175 F.3d 1014, n.1 (4th Cir. 1999) ("Because this claim was abandoned in the court below, it is not properly before us on appeal.");

39

*United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013) (noting that "new arguments cannot be raised in a reply brief").

In any event, even considering Shipton's forfeited arguments, he failed to present any *evidence* in the record establishing that the non-BGE defendants were "employers" within the meaning of the FMLA. Under the FMLA, an employer is "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). "Where one corporation has an ownership interest in another corporation, it is a separate employer" unless it meets either the joint employer or integrated employer test. 29 C.F.R. §§ 825.104, 106. Shipton makes no arguments as to either.

Shipton's only bases for holding Exelon and EBSC liable are to argue: (1) that Exelon owns both EBSC and BGE; (2) that Exelon's name is on various polices and documents; and (3) that Gross was an EBSC employee who provided services to BGE. Op. Br. 53-54. But Shipton fails to point to any *evidence* of common management, interrelation between operations, centralized control of labor relationships, or the degree of common ownership and control. 29 C.F.R. § 825.104(c)(2). Nor does Shipton point to any *evidence* in the record that he was jointly employed by BGE, Exelon and EBSC, such that he was performing work simultaneously and to the benefit of all entities. *Id*. at § 825.106; *see, e.g., Engelhardt v. S.P. Richards Co.,* 472 F.3d 1, 6 (1st Cir. 2006) (refusing to hold

parent company liable based on adoption of policies, employment documents, forms, and payroll services); *Florez v. Holly Corp.*, 154 F. App'x 707, 709 (10th Cir. 2005) (declining to find common management made parent company liable in FMLA matter). The fact that one employee (Gross) provided services to both companies is insufficient to find that Shipton, too, was an employee of both companies.

As to the individual defendants, Shipton merely asserts that "there is substantial evidence" that all three played a part in the events that culminated in the termination of his employment. Op. Br. 54. But, again, Shipton does not cite to any such evidence and, just playing a part in the event is insufficient. This Court has not directly addressed private-sector individual liability under the FMLA. But courts in this Circuit have previously held that individual liability under the FMLA for direct supervisors is appropriate only where they have "sufficient responsibility or stature within the [defendant employer] to warrant the imposition of personal liability under the FMLA." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp.2d 582, 598 (D. Md. 2013) (citation omitted). The relevant inquiry is to what extent the supervisor exerted control over the plaintiff's FMLA request and/or the decision to terminate his employment.

Here, there is no evidence to suggest that Grosscup, Woolford, Gross, or Storck exercised any control over Shipton's FMLA requests, were the ultimate decisionmakers, or harbored any retaliatory or discriminatory intent. *See, e.g.,*

41

*Salemi v. Colorado Pub. Emps' Ret. Ass'n*, 176 F. Supp. 3d 1132, 1156 (D. Colo. 2016), *aff'd*, 747 F. App'x 675 (10th Cir. 2018) (holding that supervisor who did not have corporate responsibilities could not be liable under the FMLA). Indeed, during his deposition, Shipton was unable to establish any factual basis for his assertion that they retaliated or interfered with his rights, and instead said that he sued them because he presumed they were involved in some way. JA000276-000281. In the absence of such evidence, the district court properly refused to require individual employees to face personal liability for Shipton's FMLA claims.

**CONCLUSION**

For the foregoing reasons, Appellees respectfully requests that the Court affirm the district court's grant of summary judgment in their favor.

Respectfully submitted,

*/s/ Elena D. Marcuss*

Elena D. Marcuss
Adam T. Simons
Rebecca W. Lineberry
**MCGUIREWOODS LLP**
500 East Pratt Street
Suite 1000
Baltimore, MD 21202
Tel: (410) 659-4400
emarcuss@mcguirewoods.com
asimons@mcguirewoods.com
rlineberry@mcguirewoods.com

Jonathan Y. Ellis
**MCGUIREWOODS LLP**
501 Fayetteville St.
Suite 500
Raleigh, NC 27601
Tel: (919) 755-6688
jellis@mcguirewoods.com

Counsel for Appellees

43

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P
32(a)(7)(B) because this brief contains 8,970 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(f).  This brief complies with the type face
requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R.
App. P. 32(a)(6) because this brief was prepared in a proportionally-spaced typeface
using Microsoft Word in 14-point Times New Roman Font.


February 15, 2024 ___                    /s/ Elena D. Marcuss_____
Date                                     Elena D. Marcuss
                                         Counsel for Appellees

44

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2024, I served a copy of the foregoing Corrected Response Brief of Appellees via the Court's CM/ECF system to:

Tonya Baña
4305 Saint Paul Street
Baltimore, Maryland 21218
tonya@tonyabana.com

*Counsel for Appellant*

Erika Jacobsen White
Joseph Greenwald & Laake, PA
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770-0000
ewhite@jgllaw.com

*Counsel for Amici*

I hereby certify that on February 15, 2024, I served a copy of the foregoing Corrected Response Brief of Appellees via First Class Mail to:

Carla Denette Brown, Esq.
Charlson Bredehoft Cohen Brown & Nadelhaft, PC
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190-0000
cbrown@cbcblaw.com

Jason Solomon
National Institute for Workers' Rights
1800 Sutter Street, #210
Concord, CA 94520
jsolomon@niwr.org

/s/ Elena D. Marcuss
Elena D. Marcuss